No. 10-35832

---

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

**FAMILY PAC,**

**Plaintiff/Appellee,**

**v.**

**ROB MCKENNA, in his official capacity as Attorney General of Washington, and JIM CLEMENTS, DAVE SEABROOK, JANE NOLAND, JENNIFER JOLY and BARRY SEHLIN, members of the Public Disclosure Commission, in their official capacities,**

**Defendants/Appellants.**

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON AT TACOMA

**No. C09-5662-RBL**
**The Honorable Ronald B. Leighton**
**United States District Court Judge**

---

## BRIEF OF *AMICUS CURIAE* INSTITUTE FOR JUSTICE
## IN SUPPORT OF APPELLEE AND FOR AFFIRMANCE

---

**INSTITUTE FOR JUSTICE**
**William R. Maurer***
**101 Yesler Way, Suite 603**
**Seattle, WA 98104**
**(206) 341-9300**

**INSTITUTE FOR JUSTICE**
**William H. Mellor**
**Paul M. Sherman**
**901 North Glebe Road, Suite 900**
**Arlington, VA 22203**
**(703) 682-9320**

**Counsel for *Amicus Curiae* Institute for Justice**

***Counsel of Record***

## CORPORATE DISCLOSURE STATEMENT

The Institute for Justice is a nonprofit organization organized under Section 501(c)(3) of the Internal Revenue Code.  The Institute for Justice does not have a parent corporation and does not issue stock.  There are no publicly held corporations that own ten percent or more of the stock of the Institute for Justice.

# TABLE OF CONTENTS

**Page**

**CORPORATE DISCLOSURE STATEMENT** ........................................................i

**TABLE OF CONTENTS** ........................................................ ii

**TABLE OF AUTHORITIES** ........................................................iv

**STATEMENT OF *AMICUS CURIAE*** ........................................................1

**SUMMARY OF ARGUMENT** ........................................................2

**ARGUMENT** ........................................................3

    **A.**   **Section 105(8) Limits Speech in Ballot-Measure Elections and Is *Per Se* Unconstitutional, or at a Minimum, Subject to Strict Scrutiny.** ........................................................3

        **1.**   **Section 105(8) is *per se* unconstitutional because it caps contributions to ballot-measure committees.** ........................3

        **2.**   **The Constitution guarantees speakers the right to determine when to speak.** ........................................................4

        **3.**   **A cap on contributions to ballot-measure committees acts as a restriction on expenditures.** ........................................................7

    **B.**   **Section 105(8) Does Not Serve a Compelling Governmental Interest Because It Does Not Address Corruption or the Appearance of Corruption.** ........................................................8

    **C.**   **Section 105(8) Does Not Survive Intermediate Scrutiny Because It Is Not Supported by a Legitimate Governmental Interest and, Even If It Was, It Is Not Sufficiently Tailored to Achieve Such an Interest.** ........................................................10

        **1.**   **The law is not supported by an important governmental interest because the primary purpose of Section 105(8) was to limit spending in campaigns.** ........................................................10

**Page**

**2.** **The law is not substantially related to an important governmental interest and therefore fails intermediate scrutiny.**..................................................................15

**CONCLUSION**.................................................................................16

**CERTIFICATE OF COMPLIANCE**

**CERTIFICATE OF FILING AND SERVICE**

**ADDENDA**

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alaska v. Am. Can Co.*, 358 U.S. 224 (1959) ........................................................ 12

*Brower v. State*, 969 P.2d 42 (Wash. 1998) ...................................................... 2, 4

*Buckley v. Valeo*, 424 U.S. 1 (1976) ..................................................... *passim*

*Chaker v. Crogan*, 428 F.3d 1215 (9th Cir. 2005) .................................................... 12

*Citizens Against Rent Control v. City of Berkeley*,
     454 U.S. 290 (1981) ..................................................... *passim*

*Citizens United v. FEC*, 130 S. Ct. 876 (2010) ................................................... 1, 5, 7

*Davis v. FEC*, 554 U.S. 724 (2008) ................................................... 1, 8, 9

*FEC v. Wisc. Right to Life, Inc.*, 551 U.S. 449 (2007) ........................................... 7

*First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765 (1978) ...................................... 8, 9

*Hurley v. Irish Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
     515 U.S. 557 (1995) ................................................... 5, 6

*Hyland v. Metro. Airport Comm'n*, 884 F. Supp. 334 (D. Minn. 1995) ................. 15

*Long Beach Area Chamber of Commerce v. City of Long Beach*,
     603 F.3d 684 (9th Cir. 2010) ...................................................... 8, 9

*McConnell v. FEC*, 540 U.S. 93 (2003) ................................................... 1

*Meyer v. Grant*, 486 U.S. 414 (1988) ...................................................... 5

*Mills v. Alabama*, 384 U.S. 214 (1966) .................................................. 5

*Randall v. Sorrell*, 548 U.S. 230 (2006) ................................................ 1

**Page(s)**

*Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781 (1988) ......................................6, 15

*SpeechNow.org v. FEC*, 599 F.3d 686 (D.C. Cir. 2010) ............................................9

*Thompson v. W. States Med. Ctr.*, 535 U.S. 357 (2002).........................................16

*United States v. Playboy Entm't Grp.*, 529 U.S. 803 (2000)................................5, 6

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976).........................................................................................16

## Codes

Wash. Rev. Code § 42.17.080..................................................................................15

Wash. Rev. Code § 42.17.090..................................................................................15

Wash. Rev. Code § 42.17.105(8) .................................................................... *passim*

## Other Publications

Washington Secretary of State, *Washington State's Vote-by-Mail Experience*
(2007) *available at*
http://www.sos.wa.gov/documentvault/WashingtonStatesVotebyMailExperienceO
ctober2007-2066.pdf (last visited February 1, 2011) .............................................11

## STATEMENT OF *AMICUS CURIAE*[1]

The Institute for Justice is a nonprofit, public-interest legal center dedicated to defending the essential foundations of a free society, including the right of all to speak out on elections and other matters of public import.  Campaign-finance laws that burden speech threaten this right.  For this reason, the Institute both litigates First Amendment cases that challenge campaign-finance regulations and files *amicus curiae* briefs in important cases, including *Citizens United v. FEC*, 130 S. Ct. 876 (2010); *FEC v. Wisconsin Right to Life, Inc.*, 551 U.S. 449 (2007); *Randall v. Sorrell*, 548 U.S. 230 (2006); and *McConnell v. FEC*, 540 U.S. 93 (2003).  It is through these efforts that the Institute hopes to persuade this Court and others of the need to return to first principles in the realm of freedom of speech.

---

[1] No party counsel authored any portion of this brief, and no party, party counsel, or person other than *Amicus* or its counsel paid for this brief's preparation or submission.  All parties have consented to the filing of this brief.

# SUMMARY OF ARGUMENT

The district court correctly granted summary judgment for plaintiffs and held that Washington Revised Code § 42.17.105(8) ("Section 105(8)") is unconstitutional as applied to ballot-measure committees.[2]  The Institute agrees with Appellee Family PAC and with the court below that Section 105(8) violates the First Amendment and is inconsistent with well-established jurisprudence regarding the unconstitutionality of caps on contributions to ballot-measure committees.

Section 105(8) is *per se* unconstitutional under the holdings of *Citizens Against Rent Control v. City of Berkeley*, 454 U.S. 290 (1981), and *Brower v. State*, 969 P.2d 42 (Wash. 1998), because it constitutes a cap on contributions to ballot-measure committees in the three weeks prior to a general election.  Section 105(8) is also unconstitutional because it interferes with the ability of ballot-measure committees and their supporters to speak and engage in political activity when they wish to.  As a restriction on the amount of money a ballot-measure committee may collect, the provision also operates as a direct burden on the amount of money a ballot-measure committee may spend.  Because it burdens the

---

[2] *Amicus* Institute for Justice focuses this brief on Section 105(8).  It concurs with Appellee Family PAC that the other provisions of Washington's Public Disclosure Law and the administrative provisions implementing that law at issue in this case are unconstitutional on their face and as applied to Family PAC.

ability of ballot-measure committees to disseminate their message, Section 105(8) directly burdens core political speech and is therefore subject to strict scrutiny.

Section 105(8) cannot survive strict scrutiny. The law does not, and cannot, prevent corruption or its appearance, which are the only interests the U.S. Supreme Court has found to be sufficiently compelling to justify a burden on political speech. Moreover, even if this Court were to apply intermediate scrutiny, Section 105(8) fails. As documented in its legislative history, the law's primary purpose— and its actual effect—are to limit spending in political campaigns in Washington. This is not a legitimate governmental purpose, much less an important one. Neither is the law appropriately tailored to serve an important governmental purpose. Even if the law were aimed at promoting disclosure—which it is not—it may not do so by directly limiting political activity.

## ARGUMENT

### A. Section 105(8) Limits Speech in Ballot-Measure Elections and Is *Per Se* Unconstitutional or, at a Minimum, Subject to Strict Scrutiny.

#### 1. Section 105(8) is *per se* unconstitutional because it caps contributions to ballot-measure committees.

In *Citizens Against Rent Control v. City of Berkeley*, the U.S. Supreme Court held that caps on contributions to ballot-measure committees violate the First Amendment. 454 U.S. 290, 298-99 (1981). The Court concluded that Berkeley's limit on how much money an individual could contribute to a ballot-measure

committee "plainly contravenes both the right of association and the speech guarantees of the First Amendment." *Id*. at 300.

In the thirty years since that decision, no court has ever upheld a cap on contributions to ballot-measure committees. As the Washington Supreme Court put it, "it is clear that . . . the First Amendment prohibits a state from limiting contributions for and against ballot measures." *Brower v. State*, 969 P.2d 42, 54 (Wash. 1998).

That conclusion determines this case. Under Washington law, it is illegal for a person to contribute above $5,000 to ballot-measure committees at certain times of the year. The law therefore caps contributions to ballot-measure committees and "plainly contravenes both the right of association and the speech guarantees of the First Amendment." Section 105(8) contravenes the explicit holdings of both *Citizens Against Rent Control* and *Brower* and is therefore unconstitutional.

## 2. The Constitution guarantees speakers the right to determine when to speak.

Appellants McKenna *et al*. (the "State") nonetheless argue that Section 105(8) is not a cap because contributors may make, and committees may accept, unlimited contributions prior to twenty-one days before the general election. State's Br. at 17. But this does not save the statute because, under the First Amendment, speakers have the discretion to determine when, and under what

4

circumstances, they will speak. *See Mills v. Alabama*, 384 U.S. 214, 219 (1966) (rejecting a law that prohibited newspapers from printing editorials on election day urging voters to vote a certain way even though newspapers could print whatever they wanted the day before or the day after the election). "The First Amendment protects [a group's] right not only to advocate their cause but also to select what they believe to be the most effective means for so doing." *Meyer v. Grant*, 486 U.S. 414, 424 (1988).

Under the First Amendment, a law that says "you must limit your discussion of politics on Wednesday, but you can say all you want on Tuesday" violates the Constitution as much as a law that says, "you may not speak about politics at all." *See United States v. Playboy Entm't Grp.*, 529 U.S. 803, 812 (2000) ("The distinction between laws burdening and laws banning speech is but a matter of degree."). As the Supreme Court has made clear, "the public begins to concentrate on elections only in the weeks immediately before they are held. There are short timeframes in which speech can have influence." *Citizens United*, 130 S. Ct. at 895. Thus, it is not simply a question of changing a campaign strategy for the government to forcibly "push out," State's Br. at 14, political speech to a time of the government's choosing. In banning contributions at a crucial point in the campaign, the State has limited speakers' ability to communicate their messages as they see fit. *Cf. Hurley v. Irish Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515

U.S. 557, 573 (1995) (recognizing "the fundamental rule of protection under the First Amendment, that a speaker has the autonomy to choose the content of his own message"). This is a clear violation of the First Amendment.[3]

"In the free society ordained by our Constitution, it is not the government but the people—individually as citizens and candidates and collectively as associations and political committees—who must retain control over the quantity and range of debate on public issues in a political campaign." *Buckley v. Valeo*, 424 U.S. 1, 57 (1976). In short, under our Constitution, the First Amendment creates a presumption that speakers, and not the government, know best both what to say and how to say it. *Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781, 790-91 (1988); *see also Buckley*, 424 U.S. at 14 (stating that the First Amendment protects the right of Americans to engage in uninhibited, robust, and wide-open political activity). Washington's contribution ban reverses this presumption in contravention of clear precedent preventing states from limiting contributions to ballot-measure committees.

---

[3] Because Section 105(8) applies only to political speech, and not speech on other topics occurring in the same fora, it is a content-based regulation of speech. *See Playboy Entm't Grp.*, 529 U.S. at 811-12 (noting that "the essence of content-based regulation" is that "[t]he speech in question is defined by its content"). Accordingly, Section 105(8) is not subject to the lower scrutiny that applies to reasonable, content-neutral regulations on the time, place, or manner of speech. *See id.* at 813.

3.     **A cap on contributions to ballot-measure committees acts as a restriction on expenditures.**

In *Citizens Against Rent Control*, the Supreme Court held that a cap on contributions to ballot-measure committees "imposes a significant constraint on the freedom of expression of a group or committee desiring to engage in political dialogue concerning a ballot measure." *Citizens Against Rent Control*, 454 U.S. at 299. The Court continued, "[t]here is no significant state or public interest in curtailing debate and discussion of a ballot measure. Placing limits on contributions which in turn limit expenditures plainly impairs freedom of expression." *Id*.

By limiting the amount of money a ballot-measure committee may collect in promoting or opposing a ballot measure, Section 105(8) "curtail[s] debate and discussion" of that measure. It acts as a direct restraint on the amount and timing of political speech in a political campaign. "Laws that burden political speech are 'subject to strict scrutiny,' which requires the Government to prove that the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Citizens United v. FEC*, 130 S. Ct. 876, 898 (2010) (quoting *FEC v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 464 (2007) (opinion of Roberts, C. J.)).

A reduction in the amount of money a ballot-measure committee may collect necessarily reduces the quantity of the committee's speech and thereby reduces its ability to discuss issues and reach a wide audience. *Cf. Buckley*, 424 U.S. at 19

(discussing how restrictions on the ability to spend money to disseminate political speech necessarily reduce the amount of political speech).  "Especially where, as here, a prohibition is directed at speech itself, and the speech is intimately related to the process of governing, the State may prevail only upon showing a subordinating interest which is compelling, and the burden is on the government to show the existence of such an interest.  Even then, the State must employ means closely drawn to avoid unnecessary abridgement."  *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 786 (1978) (quotation marks, citations, footnotes, and ellipses omitted).  As this Court has recently recognized, "'[m]ore speech' often means 'more money.'"  *Long Beach Area Chamber of Commerce v. City of Long Beach*, 603 F.3d 684, 686 (9th Cir. 2010).

## B.    Section 105(8) Does Not Serve a Compelling Governmental Interest Because It Does Not Address Corruption or the Appearance of Corruption.

To the extent that this Court believes that any analysis of this law is necessary beyond the fact that it caps contributions to ballot-measure committees, strict scrutiny is appropriate.  Section 105(8) may only survive if the government can demonstrate that it is narrowly tailored to serve a compelling governmental interest.  The State cannot meet its burden.

Preventing corruption or its appearance "are the only legitimate and compelling government interests thus far identified for restricting campaign

finances." *Davis v. FEC*, 554 U.S. 724, 741 (2008) (quotation marks and citations omitted). The Supreme Court has long held that anti-corruption goals have no application to ballot-measure committees because there is no candidate to corrupt: "Referenda are held on issues, not candidates for public office." *Bellotti*, 435 U.S. at 790. *See also Citizens Against Rent Control*, 454 U.S. at 298 (same).

In *Citizens United*, the Supreme Court made crystal clear that limits on campaign financing must be justified by an interest in combating corruption, and that spending for speech independent of candidates poses no threat of corruption. 130 S. Ct. at 909. On the heels of *Citizens United*, the D.C. Circuit struck down limits on contributions to independent groups. *See SpeechNow.org v. FEC*, 599 F.3d 686, 695 (D.C. Cir. 2010). This Court has reached a similar conclusion. *See Long Beach Area Chamber of Commerce*, 603 F.3d at 696-97 (striking down limits on contributions to independent expenditure groups).

The same reasoning applies to Section 105(8). It cannot be aimed at preventing corruption or its appearance because the speech it regulates is incapable of causing corruption. "[T]he First Amendment cannot be encroached upon for naught." *SpeechNow*, 599 F.3d at 695. The law therefore lacks a compelling governmental interest and it cannot survive strict scrutiny.

**C.      Section 105(8) Does Not Survive Intermediate Scrutiny Because It Is Not Supported by a Legitimate Governmental Interest and, Even If It Was, It Is Not Sufficiently Tailored To Achieve Such an Interest.**

The State argues that section (8) is subject only to intermediate scrutiny, because it is tantamount to a disclosure law.  According to the State, section 105(8) is a "timing" statute that "allows transparency as to who is funding campaigns, including for ballot measures, at the time when the majority of Washingtonians cast their ballots."  State's Br. at 11.  Specifically, the State avers, the law is a method of disclosing contributors that works in conjunction with the State's vote-by-mail system.  State's Br. at 14-15.

This argument fails, however, because the Supreme Court has rejected the notion that contribution limits can be supported by an interest in facilitating disclosure.  *See Citizens Against Rent Control*, 454 U.S. at 298-99.  But even if this Court accepts the State's argument that intermediate scrutiny applies, the law still cannot not survive.

**1.      The law is not supported by an important governmental interest because the primary purpose of Section 105(8) was to limit spending in campaigns.**

The State's efforts to transform Section 105(8) into a disclosure law do not work.  The law's purported disclosure goals do not reflect the actual purpose and effect of the law.

First, the State's argument is ahistorical.  The government could not have passed Section 105(8) to further Washington's vote-by-mail system because the system did not exist when the provision was enacted.  The Washington Legislature passed Section 105(8) in 1985.  At the time of passage, Washington had limited opportunities for voters to cast their ballots by mail.  *See* Washington Secretary of State, *Washington State's Vote-by-Mail Experience* 15 (2007), *available at* http://www.sos.wa.gov/documentvault/WashingtonStatesVotebyMailExperienceO ctober2007-2066.pdf (last visited February 1, 2011).  It was not until 1993 that all voters could request to vote absentee on an on-going basis and the Legislature did not give counties the choice to conduct all elections by mail until 2005.  *Id*.  The government could not have intended section 105(8) to support a voting system that did not come into widespread use until two decades later.

Second, if we examine the law's "primary purpose," as the Court did in *Buckley*, 424 U.S. at 26, it is clear that Section 105(8) was not directed at disclosure.  Instead, the primary purpose of the law was to limit the amount of money spent in campaigns by capping both the amounts people could contribute to campaigns and the amounts campaigns could accept.

Indeed, nothing in the legislative history of Section 105(8) indicates that its restriction on contributions in the final twenty-one days of an election had anything to do with mail-in voting and the only mention of disclosure in the bill concerned

11

the actual disclosure provisions elsewhere in the legislation. What the legislative history does include, however, is a great deal of discussion about the need to limit political spending.

For example, the legislative history of Section 105(8) includes a presentation to the Municipal League of Seattle & King County by Graham Johnson, the Administrator of Washington's Public Disclosure Commission (the current members of which are defendants in this case), which was published in the December 1984 edition of *Municipal News*. A certified copy is attached to this brief at Addendum 6 (handwritten notations in the original).[4] Entitled "Too Much of A Good Thing," the article describes the perceived need to control spending in Washington's political campaigns. Johnson claimed that the "amount spent in legislative campaigns is increasing at a rate twice that which could be attributed to inflation." He cited a law-review article arguing that spending in elections chiefly buys repetition and that "more is being spent to say less and less."

Johnson then argued that the government was not powerless to restrict this repetitive and "wasted" money. He pointed out that while the original Public Disclosure Law, Initiative 276, limited expenditures, the Washington Supreme

---

[4] *Amicus* Institute for Justice respectfully requests that this Court take judicial notice of the certified legislative history appended to this brief, which was obtained from the Washington State Archives in Olympia. Both the Supreme Court and this Circuit have long recognized that legislative history is a proper subject of judicial notice on appeal. *See, e.g.*, *Alaska v. Am. Can Co.*, 358 U.S. 224, 226-227 (1959); *Chaker v. Crogan*, 428 F.3d 1215, 1223 n.8 (9th Cir. 2005).

Court, like other courts, had struck such limits down. On the other hand, courts had upheld contribution limits, which Johnson believed could be used to accomplish the same purpose. According to Johnson, "[c]ontribution limits could be the replacement for the unacceptable provision of Initiative 276. Limits on contributions won't necessarily reduce the total amount spent in campaigns, but they could."

Johnson continued:

> There is mounting evidence that campaign financing must be controlled. We see no indication that restraint will come voluntarily. It appears that statutory controls are required.

> Some members of the legislature are also concerned . . . . Bills to limit contributions received their first serious consideration in the last legislative session. This issue is certain to receive more than passing attention in the 1985 session.

Johnson's prediction proved correct. In 1985, the Legislature considered Senate Bill 3307, which limited contributions to political committees engaged in state campaigns. This bill would become, in part, Section 105(8). As reported out of the Senate Judiciary Committee, the Senate Bill Report contained a "background" section that echoed Johnson's concerns about campaign spending:

> There has been a dramatic increase in the amount of money raised and spent in Washington State's legislative campaigns since 1974. There is concern that candidates for elective office may be unduly influenced by large campaign contributions from sources who stand to gain

13

> or lose economically from the decisions of the
> Legislature.  Legislation is suggested which acts as an
> incentive for candidates to broaden their base of support
> and involve more individuals in the election process.

(The Senate Bill Report for SB 3307 is attached to this brief at Addendum 4-5.)

After the bill was revised in the House, the Legislature passed it.  The Senate's

Final Bill Report contains a background section identical in substance to the

background section quoted above.  (A copy of the Final Bill Report for Substitute

Senate Bill 3307 is attached to this brief at Addendum 2-3.)[5]

In short, section 105(8) was aimed directly at what the PDC and the

Legislature viewed as the problem of the "dramatic increase" in spending in

campaigns.  The law was the mechanism by which the government could limit

such spending.  In *Buckley*, however, the Supreme Court rejected the argument that

the government may restrict campaign spending in order to reduce the costs of

campaigns.  As the Court stated, "[t]he First Amendment denies government the

power to determine that spending to promote one's political views is wasteful,

excessive, or unwise."  424 U.S. at 57.  Thus, the government is constitutionally

prohibited from determining when political speech has become, as Graham

Johnson put it, "too much of a good thing."

---

[5] There is no discussion in the legislative history of Senate Bill 3307 of why the
Legislature included ballot measure committees in the bill.

Section 105(8) is simply not a disclosure provision.  It is a direct restriction on speech and political association, as it was intended to be.  "[C]alling a duck a dog does not make the duck man's best friend."  *Hyland v. Metro. Airport Comm'n*, 884 F. Supp. 334, 338 (D. Minn. 1995).  Because its purpose, and its effect, is to limit spending in campaigns, Section 105(8) is not supported by an important, or even legitimate, governmental interest.

> **2.    The law is not substantially related to an important governmental interest and therefore fails intermediate scrutiny.**

Even if this Court were to conclude that Section 105(8) is a disclosure provision, it is still unconstitutional because it is not substantially related to achieving any legitimate interest in disclosure.

As noted above, the Supreme Court has rejected the argument that contribution limits may be justified as a means of facilitating disclosure.  *See Citizens Against Rent Control*, 435 U.S. at 298-99.  The State already requires ballot-measure committees to disclose their finances.  *See* Wash. Rev. Code. §§ 42.17.080, .090.  Whatever difficulties the State may have in ensuring that disclosures are timely made simply cannot justify banning contributions at a particular time.  As the Supreme Court has repeatedly made clear, "the First Amendment does not permit the State to sacrifice speech for efficiency."  *Riley*, 487 U.S. at 795.  In short, it is never appropriate to ban speech or a means of speech simply because the State may have difficulty enforcing other laws or

15

ensuring that the public is sufficiently informed. *See Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 374 (2002) (rejecting the claim that government has an interest in banning protected speech in order to prevent the public from making bad decisions on the basis of that speech); *Citizens Against Rent Control*, 435 U.S. at 792 n.31 (rejecting the "highly paternalistic" approach that the government has any role to play in restricting what messages the people may hear) (quoting *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 770 (1976)).

In sum, Section 105(8) does far too much to be considered a sufficiently tailored disclosure provision. It sacrifices core political speech for tangential funding information the government considers more important. It does not survive intermediate scrutiny.

## CONCLUSION

For the reasons stated above and for those discussed in Appellee Family PAC's brief, this Court should affirm the decision of the district court that Section 105(8) is unconstitutional when applied to ballot-measure committees.

Dated this 1st day of February, 2011.

                                    Respectfully submitted,

                                    /s/ William R. Maurer
                                    INSTITUTE FOR JUSTICE
                                    William R. Maurer*
                                    101 Yesler Way, Suite 603
                                    Seattle, WA 98104
                                    (206) 341-9300

                                    INSTITUTE FOR JUSTICE
                                    William H. Mellor
                                    Paul M. Sherman
                                    901 North Glebe Road, Suite 900
                                    Arlington, VA 22203
                                    (703) 682-9320

                                    Counsel for *Amicus Curiae*
                                    Institute for Justice

*Counsel of Record*

## CERTIFICATE OF COMPLIANCE

I certify pursuant to Federal Rule of Appellate Procedure 29(c)(5) and Rules

32(a)(5) & (7) that the attached brief was prepared using a proportionally spaced,

14—point typeface and contains 3,702 words, excluding the parts of the brief

exempted by Rule 32(a)(7)(B)(iii).

Dated this 1st day of February, 2011.


/s/ William R. Maurer
William R. Maurer
Counsel for *Amicus Curiae*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 1st day of February, 2011, I caused this Brief of

*Amicus Curiae* Institute for Justice In Support of Appellee and Affirmance to be

filed electronically with the Clerk of Court using the CM/ECF System, which will

send notice of such filing to the following registered CM/ECF users:

ROBERT M. MCKENNA
Attorney General
LINDA A. DALTON
Senior Assistant Attorney General
NANCY J. KRIER
General Counsel for the Public Disclosure and
Special Assistant Attorney General
P.O. Box 40100
Olympia, WA 98504-0100
(360) 664-9006
Attorneys for Appellants

JAMES BOPP, JR.
JOSEPH E. LA RUE
NOEL JOHNSON
Bopp, Coleson & Bostrom
One South Sixth Street
Terra Haute, IN 47807-3510
(812) 232-2434
Attorneys for Appellees

/s/ William R. Maurer
William R. Maurer
Counsel for *Amicus Curiae*